**In re John Boyd ATKINS, Debtor.**

**Bankruptcy No. 98–02136–BKC–3F3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 9, 1998.

Robert Altman, Palatka, FL, for debtor.

Bernard C. O'Neill, Jr., Orlando, FL, for Douglass.

Mamie L. Davis, Trustee, Jacksonville, FL.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case is before the Court on Debtor's Objection to Claim 3 Filed by Douglass Fertilizer & Chemical, Inc. (Doc. 16). Douglass Fertilizer & Chemical, Inc. ("Douglass Fertilizer") filed a proof of claim for $79,381.64 on May 20, 1998. John Boyd Atkins ("Debtor") filed an objection on June 4, 1998. After a hearing held on August 27, 1998 and the presentations of counsel, the Court enters the following findings of fact and conclusion of law.

### FINDINGS OF FACT

In the early 1970's, Debtor and Lonnie W. Adams purchased a fertilizer business called Farm Chemical & Fertilizer, Inc. ("Farm Chemical"). In the late 1980's, Mr. Adams wanted to get out of the business. To facilitate the buyout Mr. Adams desired, Debtor purchased all of Mr. Adams' stock in Farm Chemical primarily using corporate funds. These funds were characterized as a loan from Farm Chemical to Debtor. After this transaction, Debtor was then the sole shareholder of Farm Chemical.[1]

On February 21, 1994, Debtor and Gregg M. Griffin executed an Acquisition Agreement, in which Mr. Griffin became the sole shareholder of Farm Chemical. Mr. Griffin was an employee of Farm Chemical for eighteen years, but had never been involved with the finance and business aspects of the corporation. Attached to the Acquisition Agreement was a current list of accounts payable and accounts receivable. Accounts receivable totaled $240,759.77. Accounts payable totaled $428,010.47, exceeding receivables by

---

1. At an undetermined period, Barbara R. Atkins, Debtor's wife, owned one share of Farm Chemical.

$187,250.70. Of the $428,010.47 owed by Farm Chemical at the time of this acquisition, Douglas Fertilizer was owed $350,830.97.

For value received from the purchase of Farm Chemical, Mr. Griffin and his wife, Tilda J. Griffin, executed a promissory note in favor of Barbara R. Atkins, Debtor's wife, for $230,944.27. This note would not become payable until thirty (30) days following the receipt of confirmation from Douglass Fertilizer that the account due and owing to Douglass Fertilizer was current. Douglass Fertilizer received copies of both the Acquisition Agreement and the promissory note prior to their execution. They were also given an opportunity to express concerns or problems with this acquisition to Tito S. Smith, the attorney who prepared documents for the sale of Farm Chemical from Debtor to Mr. Griffin. Douglass Fertilizer also received a copy of the executed Agreement.

Mr. Griffin's operation of Farm Chemical turned out unsuccessful. On October 15, 1996 Douglass Fertilizer obtained a Final Judgment in the Circuit Court, In and For Seminole County, Florida against Farm Chemical, Mr. Griffin and Tilda J. Griffin in the amount of $565,534.11. On October 28, 1996 the Circuit Court, In and For Seminole County, Florida entered an Execution commanding the sheriffs of the State of Florida to levy on the property subject to execution of Farm Chemical, Mr. Griffin and Tilda J. Griffin. Mr. Griffin paid a trivial sum toward the Final Judgment against him and is now employed by Douglass Fertilizer with a $37,000.00 yearly salary. Douglass Fertilizer became the successor-in-interest to Farm Chemical.

On February 11, 1998, Douglass Fertilizer, as successor-in-interest to Farm Chemical, filed a Complaint in the Circuit Court, In and For Putnam County, Florida against Debtor alleging that loans made by Farm Chemical to Debtor survived the sale of Farm Chemical to Mr. Griffin. Douglass Fertilizer alleges that between January 1, 1988 and February 28, 1994 Debtor periodically borrowed money from Farm Chemical with partial repayment. Douglass Fertilizer further alleges these loans are reflected on Farm Chemi-

cal's books and tax returns as shareholder loans. Douglass Fertilizer claims that $56,486.04 of shareholder loans plus interest is owed to Douglass Fertilizer as successor-in-interest to Farm Chemical.

Debtor filed his Chapter 13 petition on March 19, 1998. Debtor listed Douglass Fertilizer as a creditor having an unsecured nonpriority claim of $56,486.04, which was characterized as contingent, unliquidated, and disputed. Douglass Fertilizer filed a proof of claim for $79,381.64 on May 20, 1998. Debtor filed an objection to this claim on June 4, 1998.

Debtor claims that when Lonnie W. Adams wished to get out of the business, the corporate accountant decided to utilize a stock sale to Debtor rather than to the corporation. By doing this, Debtor purchased the stock using funds from Farm Chemical and the funds were carried on the corporate books as a loan to Debtor. There was no written agreement between Farm Chemical and Debtor concerning these loans. Debtor claims Spencer Douglas, president and principal stockholder of Douglass Fertilizer, urged him to sell Farm Chemical to Mr. Griffin. Debtor claims these loans were not included as a Farm Chemical asset in the sale to Mr. Griffin. In essence, Debtor claims to the extent there was any money owed to Farm Chemical, that debt was extinguished by the sale. Debtor claims that there was never any intent to pay back loans made while he controlled Farm Chemical, but rather Farm Chemical carried these loans on its books for tax and accounting reasons. Additionally, there were no attempts to collect any portion of the loan from the time Mr. Griffin bought all the company's stock on February 21, 1994 until Douglass Fertilizer as successor-in-interest filed a complaint on February 11, 1998.

Debtor claims the Acquisition Agreement exclusively governs the sale from himself to Mr. Griffin and that parol evidence should not be considered in determining the provisions of that agreement. Additionally, Debtor claims that to the extent the loans survived the stock sale to Mr. Griffin, repay-

ment violates the statute of frauds pursuant to Florida Statute § 725.10.[2]

## CONCLUSIONS OF LAW

■ Section 502(a) of the Bankruptcy Code, made applicable to Chapter 13 cases by Section 103(a), provides that a claim, proof of which is timely filed, is "deemed allowed" unless a party in interest objects. *In re Hartford,* 7 B.R. 914, 916 (Bankr.D.Maine 1981); *See In re Britt,* 199 B.R. 1000, 1007–9 (Bankr.N.D.Ala.1996) (comprehensive discussion of the allowance of claims); *In re Bertelt,* 206 B.R. 587, 593–94 (Bankr.M.D.Fla. 1996). This "deemed allowance" means that the filed proof of claim constitutes prima facie evidence of the validity and amount of the claim and that the claim will be allowed unless a party in interest objects. *Id.*

11 U.S.C. § 502(b) provides ". . . [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of filing of the petition, and shall allow such claim in such amount . . .". 11 U.S.C. § 502 (1998). Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim filed in accordance with the rules "shall constitute prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001 (1998).

This Court previously addressing burden shifting in an objection to claim hearing stated that: "The burden of proof is on the objecting party to produce evidence 'equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim. However the burden of ultimate persuasion rests with the claimant.'" *In re Clements,* 185 B.R. 895, 898–99 (Bankr. M.D.Fla.1995), quoting, *In re VTN, Inc.,* 69 B.R. 1005 (Bankr.S.D.Fla.1987).

Douglass Fertilizer's proof of claim included: (1) a copy of the Complaint filed in circuit court against the debtor, (2) a copy of the security agreement between Farm Chemical and Douglass Fertilizer[3], (3) a copy of a financing statement filed March 19, 1991, (4) a copy of a financing statement filed March 25, 1996, (5) a copy of the Final Judgment against Farm Chemical, Gregory M. Griffin and Tilda J. Griffin, (6) a handwritten ledger sheet for Farm Chemical[4], and (7) copies of Farm Chemical's 1992 and 1994 income tax returns—Form 1120. The Court finds that Douglass Fertilizer set forth prima facie evidence of the validity and amount of the claim.

■ "Cases interpreting § 502 and Fed. R.Bankr.P. 3001(f) have uniformly held that under these provisions, a party objecting to the claim must present affirmative evidence to overcome the presumptive validity of a properly filed proof of claim." *In re Michi-*

---

2. That statute, titled "Promise to pay another's debt, etc." provides:

   No action shall be brought whereby to charge any executor or administrator upon any special promise to answer or pay any debt or damages out of her or his own estate, or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person or to charge any person upon any agreement made upon consideration of marriage, or upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them, or for any lease thereof for a period longer than 1 year, or upon any agreement that is not to be performed within the space of 1 year from the making thereof, or whereby to charge any health care provider upon any guarantee, warranty, or assurance as to the results of any medical, surgical, or diagnostic procedure performed by any physician licensed under chapter 458, osteopathic physician licensed under chapter 459, chiropractor

   licensed under chapter 460, podiatrist licensed under chapter 461, or dentist licensed under chapter 466, unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him or her thereunto lawfully authorized.

   Fla.Stat.Ann. § 725.10 (West 1998).

3. This agreement, executed on March 12, 1991, secured $302,380.52 of debt owed by Farm Chemical to Douglass Fertilizer. An extensive list of collateral secured this debt, which seemed to include all tangible and intangible assets of Farm Chemical at that time. The list did not specifically mention any shareholder loans owed by Debtor to Farm Chemical.

4. This document noted shareholder loans from late 1988 to 1996. The document reflects that Debtor has a negative balance of $56,486.04. However, no entries were made for Debtor after February of 1994.

*gan–Wisconsin Transp. Co.*, 161 B.R. 628, 636 (Bankr.W.D.Mich.1993). Once a party overcomes this presumption, the burden of persuasion shifts to the creditor. *Id.* See *Fullmer v. United States*, 962 F.2d 1463, 1466 (10th Cir.1992); *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3rd Cir.1992).

■ The Court finds that Debtor produced evidence to overcome the presumptive validity of Douglass Fertilizer's properly filed proof of claim. Debtor testified that none of the loans survived the sale of Farm Chemical to Mr. Griffin and that no attempt was made to collect any money from Debtor until Douglass Fertilizer took over Farm Chemical.

There was conflicting testimony at the hearing between Mr. Griffin and Debtor. Mr. Griffin testified that he did not know of any loan from Farm Chemical to Debtor until after he took over Farm Chemical. He testified that Debtor told him of the loan after the sale and that Debtor insisted that Mr. Griffin retain Farm Chemical's accountant so that the loan could be written off. Debtor testified that he never said anything to Mr. Griffin about the loan after the closing of the sale. Debtor said Mr. Griffin was represented by counsel and had access to Farm Chemical's records. Tito S. Smith, the attorney preparing the documents for the sale of Farm Chemical to Mr. Griffin, testified that Debtor owed no money as a result of the sale of Farm Chemical.

This Court agrees with the position of Mr. Smith, that Debtor owed no money as a result of the sale of Farm Chemical. The Court questions Douglass Fertilizer's position and the testimony of Mr. Griffin. Fundamental to the Court's determination of the validity of this claim is why would anyone sell all their interest in a corporation and still owe money to that corporation. Further, if indeed a seller was to owe money to a corporation after the sale of all of the outstanding stock of that corporation, why is there no

documentation signed by the seller evidencing a debt to the corporation.

■ Douglass Fertilizer asserts that the Acquisition Agreement signed by Debtor and Mr. Griffin on February 21, 1994 did not terminate obligations of Debtor to Farm Chemical for loans previously made to Debtor. The proof of claim filed by Douglass Fertilizer included a number of documents extraneous to the Acquisition Agreement.[5] An issue arises, as to whether these extraneous documents should be considered by the Court. The well established rule is that "a written contract cannot be modified by parol evidence unless the Court finds that the contract is ambiguous or there is credible evidence that there is a subsequent oral agreement canceling and replacing the original written agreement." *In re Schmidt*, 164 B.R. 696, 699 (Bankr.M.D.Fla.1994). In *Schmidt*, Judge Paskay states:

> It is a well established doctrine that the parol evidence rule protects valid, complete, and unambiguous written instruments from any verbal assault that would contradict, add to, subtract from, or affect its construction. Thus, parol evidence will only be considered if there is clear, competent evidence that the subsequent parol contract was intended to cancel and supersede the original written contract.

*Id.* In Florida, if no ambiguity exists, the actual language used in the contract is the best evidence of the parties' intentions and the plain meaning of the language controls. *Amplicon Financial, Inc. v. Sunshine–Jr., Inc. (In re Sunshine–Jr. Stores, Inc.)*, 198 B.R. 823, 828 (M.D.Fla.1996). Ambiguity exists where the contract language is reasonably susceptible to more than one construction. *Id.* citing *Hamilton Construction Co. v. Board of Public Instruction*, 65 So.2d 729 (Fla.1953).

5. Section 8.8 *Entire Agreement*, of the Acquisition Agreement, provides:

This Agreement constitutes the entire agreement among the parties hereto and supersedes and cancels any prior agreements, representations, warranties, or communications, whether oral or written, among the parties hereto relating to the transactions contemplated hereby or the subject matter herein. Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by an agreement in writing signed by the party against whom or which the enforcement of such change, waiver, discharge or termination is sought.

Douglass Fertilizer agrees that the parol evidence rule is not applicable. However, Douglass Fertilizer claims that under the Acquisition Agreement the shareholder loans to Debtor remain intact. The Court finds this position untenable when reviewing the agreement.

The Acquisition Agreement between Debtor and Mr. Griffin makes no mention of paying back any loans to Farm Chemical. In fact, the Acquisition Agreement required Farm Chemical to pay Debtor a salary of $660.00 per week until the account due and owing to Douglass Fertilizer was current.[6] At the time the account to Douglass Fertilizer became current, this salary payment would terminate and payment of the promissory note in favor of Debtor's wife would begin. Mr. Griffin made no attempt to collect any money from Debtor after the sale of Farm Chemical. Not until Douglass Fertilizer became successor-in-interest to Farm Chemical and employer of Mr. Griffin, who is obligated to Douglass Fertilizer by reason of the Final Judgment and his current employment, did any attempt to collect money from Debtor occur.

Section 502(b)(1) provides that claims will not be allowed, to the extent that such claim is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (1998). No other subsection of 11 U.S.C. § 502(b) provides an exception applicable to this case.

This Court is not persuaded by the preponderance of the evidence presented that Douglass Fertilizer has a valid claim against Debtor. Rather, the preponderance of the evidence presented suggests that all debts owed by Debtor to Farm Chemical were extinguished at the time of the sale of Farm Chemical to Mr. Griffin in 1994.

The Court, finding no agreement to repay loans to Farm Chemical to exist, need not address Debtor's alternative argument concerning the statute of frauds. The Court looking at the Acquisition Agreement finds no ambiguity. The agreement says nothing about repayment of shareholder loans but is very specific concerning other details of the transaction. The Court, finding that all of Debtor's obligations concerning any shareholder loans to be extinguished at the time of the sale to Mr. Griffin, sustains Debtor's objection.

---

6. Section 2.2.2 *Corporate Payroll,* of the Acquisition Agreement, provides:

> In recognition of the account outstanding obligation to Douglass Fertilizers & Chemicals, Inc. it is hereby agreed to by the parties [J. Boyd Atkins, seller and Gregg M. Griffin, purchaser] hereto, and each of them, that there will be no dividends nor bonuses paid to any employees or stockholders until the account payable to Douglas Fertilizers & Chemicals, Inc. has been retired. The Seller, J. Boyd Atkins, shall remain within the employment of the Acquired Company at a salary of $660.00, gross pay, per week until such time as regular monthly installments due to Lender, Barbara R. Atkins, begin under the Promissory Note ...